UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ADRIAN FICHIDIU AND LUCIAN BURULEA,<br><br>*Defendants.* | Crim. Action No.: 19-cr-365 (PGS)<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant Lucian Burulea's ("Burulea") remaining motion for a pretrial hearing on the admissibility of his post-arrest statements.[1] (Burulea Moving Br. at 18-19, ECF No. 26-1). For the reasons stated herein, Burulea's motion is granted and the Court will conduct a pretrial hearing to determine the admissibility of his post-arrest statements under *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny.

## BACKGROUND

The Government alleges that Defendants conspired to fraudulently obtain bank account information to unlawfully withdraw large sums of money from unsuspecting bank customers' accounts. (Gov't Opp. Br. at 1, ECF No. 27). In particular, the Government alleges that Defendants engaged in an unlawful practice commonly referred to as "ATM skimming." (*Id.*).

ATM skimming involves the installation of so-called "skimming" devices in the card reader interfaces of bank Automated Teller Machines ("ATMs"). (Burulea Moving Br. at 2 n.1, ECF No. 26). These "skimming" devices are used to record the information contained in the

---

[1] The Court resolved all other outstanding pretrial motions filed by Burulea and Defendant Adrian Fichidiu ("Fichidiu") (and together, "Defendants") by separate Order dated November 21, 2019.

magnetic strip of bank customers' ATM cards. (*Id.*). Once the information is recorded, the customers' information can then be encoded onto the magnetic strip of other bank or gift cards. (Gov't Opp. Br. at 1). In order to use a new card with the fraudulently-obtained customer information encoded onto its magnetic strip, a fraudster would first have to obtain the personal identification numbers ("PIN") associated with the customers' ATM cards. To do that, a perpetrator would generally need to install pinhole cameras into the ATM components to record the keystrokes of bank customers as they entered their PINs during ATM transactions. (Burulea Moving Br. at 2 n.1).

On or about August 12, 2018 at approximately 2:00 p.m., Defendants arrived at a Provident Bank branch in Iselin, New Jersey. (Gov't Opp. Br. at 2). Law enforcement officers conducting surveillance in the area observed Fichidiu enter the atrium of the bank and conduct a transaction at an ATM, which the Government alleges was later determined to be fraudulent. (Government Opp. Br. at 2). Burulea remained in the front passenger seat of the vehicle while Fichidiu conducted the transaction. (*Id.*). Defendants were equipped with earpieces attached to their cell phones to communicate with each other while Fichidiu used the ATM. (*Id.* at 2-3).

After being detained by the surveilling officers, the officers discovered several gift cards hidden in Defendants' underwear. (*Id.* at 3). The secreted gift cards had red stickers with four-digit numbers written on them, presumably ATM PINs. (*Id.*). Law enforcement then searched Defendants' vehicle after obtaining a warrant and discovered approximately fifty additional gift cards, all having red stickers with four-digit numbers written on them. (*Id.*). Defendants were then arrested and charged federally on November 1, 2018. (*Id.*).

On or about July 11, 2019, a federal grand jury returned a superseding indictment charging Defendants with conspiracy to commit bank fraud, contrary to 18 U.S.C. § 1349 (Count One);

bank fraud, contrary to 18 U.S.C. § 1344 (Counts Two through Five pertaining to Fichidiu and Counts Six through Nine pertaining to Burulea), and aggravated identity theft, in violation of 18 U.S.C. §§ 1028(a)(1) and (2) (Counts Ten and Eleven pertaining to Fichidiu and Count Twelve pertaining to Burulea). (Superseding Indictment, ECF No. 17).

## ANALYSIS

In the instant motion, Burulea requests a pretrial hearing "on the admissibility of his post-arrest statements" on the grounds that he "denies . . . that he waived his Fourth Amendment right to be free from unreasonable search and seizure." (Burulea Moving Br. at 18). The Government opposes his request and submits that the Court should not suppress Burulea's post-arrest statements because they were made knowingly and voluntarily. (Gov't Opp. Br. at 13-15).

Fed.R.Crim.P. 12(b)(3)(C) permits Defendants to submit "motion[s] to suppress evidence . . . before trial." *See United States v. Cummings*, 156 F. App'x 438, 444 (3d Cir. 2005). "An evidentiary hearing for a motion to suppress is not granted as a matter of course." *United States v. Blackman*, 407 F. App'x 591, 594 (3d Cir. 2011) (citing Fed.R.Crim.P. 12(c)). Rather, this Court maintains the discretion to hold a suppression hearing regarding the admissibility of statements or other evidence. *United States v. Galindez*, No. CRIM.A. 03-75M MPT, 2003 WL 22769597, at *1 (D. Del. Nov. 13, 2003).

Although Fed.R.Crim.P. 12 does not by its terms specify what entitles a defendant to a pretrial evidentiary hearing, the Third Circuit has held that a defendant "must demonstrate a 'colorable claim' for relief." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (citation omitted). Indeed, "a trial court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief." *Id.* (quoting *United States v. Richardson*, 764 F.2d 1514, 1526-27 (11th Cir. 1985)). "[A]

motion to suppress must be detailed enough to present both a colorable constitutional claim and disputed issues of material fact that will affect a district court's resolution of the motion." *Blackman*, 407 F. App'x at 594–95.

As indicated above, the Third Circuit has held that district courts do not abuse their discretion in refusing to hold a pre-trial suppression hearing where the defendant fails to allege in his application sufficient facts warranting relief. *Id.* Here, Burulea's written application for a pretrial suppression hearing lacks specific facts suggesting that he is entitled to relief. Instead, his motion includes one conclusory statement: "Defendant denies . . . that he waived his Fourth Amendment right to be free from unreasonable search and seizure." (Burulea Moving Br. at 18). Accordingly, the Court agrees with the Government that Burulea's moving papers are facially deficient.

However, at oral argument, Burulea submitted on the record colorable arguments in support of his motion as to why specifically his post-arrest statements may be inadmissible under *Miranda*. It is well-established that under *Miranda* and its progeny, a criminal defendant may effectively waive his rights to remain silent and have counsel present during a custodial interrogation provided the waiver is made voluntarily and knowingly. *Miranda*, 384 U.S. 436 at 444. Waiver is "voluntary" if "it was the product of a free and deliberate choice rather than intimidation, coercion or deception." *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1979)). Waiver is made "knowingly" if it was made with "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quoting *Moran*, 475 U.S. at 421). "[A] heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently

waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda*, 384 U.S. at 475.

Here, Burulea argues that a pretrial suppression hearing is necessary to properly determine whether he effectuated a voluntary and knowing waiver of his *Miranda* rights before making his post-arrest statements to law enforcement officers at a custodial interrogation. (*See* Burulea Moving Br. 18). At oral argument of his motion, video footage of Burulea's *Miranda* waiver was shown to the Court. The video showed a law enforcement officer carefully administering Burulea his *Miranda* rights, as well as Burulea initialing a document to indicate that he understood his rights and understood that he was waiving same. Following the demonstrative, Burulea submitted that the totality of circumstances nevertheless undermine the validity of his waiver, including: (i) his limited education (Burulea did not complete high school); (ii) his limited time in this country (Burulea only immigrated to this country within the last year); (iii) his inexperience with dealing with law enforcement, particularly in the United States (Burulea purports to have no criminal record); (iv) the fact that English is his second language, *inter alia*. Burulea also pointed to his "quick" responses to the law enforcement officer's questions and suggested that same indicated his inability to fully comprehend what was being said.

In light of all of the circumstances submitted by Burulea on the record, the Court shall exercise its discretion and conduct a hearing. In particular, the Court finds that Burulea's statements on the record in support of his motion warrant a suppression hearing because they "present both a colorable constitutional claim and disputed issues of material fact that will affect [this Court's] resolution of the motion." *Blackman*, 407 F. App'x at 594–95. The Court shall rule on the admissibility of the subject post-arrest statements following the suppression hearing.

## ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments set forth therein; and for the reasons set forth on the record on November 20, 2019; and for the foregoing reasons; and for good cause shown;

**IT IS** on this 21st day of November, 2019,

**ORDERED** that Defendant Burulea's motion for a pretrial suppression hearing concerning his post-arrest statements (ECF No. 26) is **GRANTED**; and it is further

**ORDERED** that the pretrial suppression hearing is hereby set for December 23, 2019 at 10:00 a.m.

_____
PETER G. SHERIDAN, U.S.D.J.